Madam Clerk, please call the first case. 115-0122, John Chlada v. Burke Beverage. Good morning. Counsel, you may proceed. May it please the Court, Mr. Russin, my name is Stephen Glowis, on behalf of the appellate, John Chlada. Mr. Chlada was a beer truck delivery driver for Burke Beverage. On July 15, 1999, he injured his low back. He was diagnosed with a herniated disc and underwent surgery at the L5-S1 level by Dr. Andrew Zelda. After the surgery, he was given permanent restrictions that precluded him from returning to his usual and customary employment as a beer truck delivery driver. The employer accommodated him with a lesser-paying job in the warehouse. He worked for this position for over two years, when on October 23, 2002, he sustained a second injury to his neck. He was diagnosed with a herniated disc at C5-C6 and stenosis at C6-C7. He returned to the care of Dr. Wazelby and underwent a cervical fusion. After that surgery, Dr. Wazelby again released him to return to work with additional restrictions. At this point, the employer refused to accommodate him any further. He performed a job search but was unable to find work. Ultimately, the Commission, on January 9, 2008, found that he was permanently and totally disabled. This appeal only deals with the first case, the low back injury. In that case, the Commission found that he was entitled to a wage differential under Section 8D1 from June 12, 2000, when he began to work in the warehouse, to January 12, 2003, when he began losing time because of the second injury. So in this case, you're alleging the Commission erred in finding the entitlements to the wage differential benefits under 801D. They erred when they terminated them when he became permanently and totally disabled as a result of a separate accident. Alleging that the award of the wage differential was appropriate, but it was not appropriate for the Commission to terminate the benefits. How would you respond to this argument? If the claimant cannot work at all, how does he demonstrate a diminished working capacity as a result of the July 15th lower back injury? He's unable to show he was earning anything, right? So how does he get both? Because of the first injury, he had an impairment of earnings that precluded him from returning to work as a beer truck driver. Any other additional impairment was due to the second injury, not because of the first injury. He was working for over two years. What's the wage differential based on? The wage differential is based on... Diminished earning capacity, isn't it? Diminished earning capacity because of that particular accident. But in order to get a wage differential, you have to have some capacity. He has none. Well, he actually does. He wasn't found to be incapable of performing any work at all. He has a permanent total. He has no capacity to work, according to the second case. He was released to return to work with restrictions, and he couldn't find work. But he's a permanent total odd lot. So now the question becomes, if a person's earning ability is zero, and his wage at the time of arbitration is, let's say, $500, whatever it is, a week, is he entitled to a wage differential of $500 if his earning capacity is zero? It says that how much he is earning, or he is capable of working in some suitable employment. This man has no suitable employment, so there's no diminishment in capacity because he has none. But I would add to that analysis, as a result of that accident. It doesn't say that. As a result of the first accident. It doesn't say that. It doesn't say that. I mean, that's what you're getting wage differential for. It didn't say that, but I think it would be a reasonable interpretation. But the statute says the amount he is earning, which would mean how much he's making at the time of the arbitration, or it says he is able to earn in some suitable employment. Now, that would have to be at the time of the employment. I believe it says after the accident. No, it doesn't. Well, here. Yeah, okay. Here it says, or is able to earn in some suitable employment or business after the accident. So after the accident, he was able to work as a warehouse man. Well, yeah, but that has to be judged at the time of the arbitration. I mean, what would you do? You'd turn around. If that were the case, a guy would have a wage difference and might be earning a wage of $23 an hour two weeks after the accident. And by the time arbitration arrives, the only job he can get is minimum wage. You wouldn't suggest that his wage differential should be calculated based on $23, would you? No, I mean. It's the date of the arbitration. It has to be. It's the only date it could be. Right. And as a result of that particular accident is what I would add to that analysis. Yeah, but it just says after the accident. It doesn't say. My problem is if he has zero capacity to work on the date of the arbitration, how can he get a wage differential? It makes no sense. And second of all, if your theory were correct, he'd be collecting a wage differential for the first accident and permanent total for the second. And is the benefit not the same on both? No, because it's a lesser wage that he'd be making on the second accident. Yeah, and there you have a point. The first accident is going to be calculated based upon his average weekly wage as a beer truck driver. The second accident, because of the amount of time that's passed, is going to have to be calculated based upon a wage as a warehouseman at a much lower rate. Right. And so therefore he's not compensated for the first accident if he's not given a wage differential. Well, that depends on whether he's getting maximum rate. Yeah. Is he getting maximum? He was a maximum. When this accident occurred, Bohannon was in effect. And it was before the act was amended. So the wage differential award was at the maximum permanency rate. Yeah, like $484 a week or something like that. $485.65 a week, which is substantially less than two-thirds of what he was making. He was making over $1,200 a week when he was working as a beer truck driver. What does he get as a permanent total? He's getting $466.50 per week as a permanent total. Which is significantly less than... If he was still working at the time of arbitration, he'd be making $1,665. $1,600 a week, yeah. A week. So he's getting a fraction... But that's actually calculated based on his estimate of 4,500 cases a week or something. Right. The rate was $0.37 per case. He estimated he sold 4,500 cases a week.  Let me ask a question to make sure I understand here. The arbitrator, for the same period that the commission awarded a wage differential, awarded temporary partial disability benefits. Is that right? No, I don't think so. There was a period while he was working a lesser-paying job, but he was not at maximum medical improvement yet. Okay, so it wasn't during the same time period. Correct. June 12, 2000 is when he was found to be at maximum medical improvement, and he was still working at a warehouse. He was working at a warehouse before he was at maximum medical improvement. That was temporary partial. After that, it was awarded the wage differential. The issue that I intend on presenting is whether or not the commission's finding that his disability ended as a consequence of additional disability, because that's why they stopped paying him, is contrary to the law. And because this issue involves statutory construction and interpretation, in Section 8D.1, we would ask for a de novo review. Here, the commission found he was entitled to a wage differential. They found that all the statutory elements of a wage differential were proven. Under Section 8D.1, it indicates that the benefit is to be paid for the duration of the disability. So the only indication in the Act for the termination of the benefit is if the disability ends. Here, the commission found the entitlement to the disability benefit ended because of the second accident. And I can basically state my... Can I ask you a hypothetical question? If a worker is injured and he gets a wage differential benefit, and he's drawing the wage differential benefit, and he goes to work for a subsequent employer and winds up becoming a permanent total for the second employer, but it occurs after the arbitration in the first case, is he entitled to get both his wage differentials from the first case plus permanent total benefits from the second? I believe so, yes. Is there anything in the Act that would allow the first employer to get any type of a reduction from the wage differential? No, there was a Supreme Court case, Cassin's Transportation v. Industrial Commission, where the Supreme Court found that the employer can't revisit an 8D.1 wage differential once it's awarded. So I suppose the question is, why should the distinction be drawn for an employee who becomes a permanent total before the arbitration of his first case, as opposed to an employee that becomes a permanent total after he's already drawing a wage differential? I don't think there should be a distinction. Is there any logic to it, do you think? Well, I'm just following what the Act says. No, I understand. And the only provision in the Act for the termination of an 8D.1 wage differential is if the disability adds. Yes, it's for the duration of the disability. Pardon me? How do you define disability? What is a disability? Well, a disability, according to 8D.1, is an inability to perform your usual customary employment and then the impairment of earnings. Yes. Well, disability under the Act is no ability to earn money, right? Well, but there'd be total disability. So you have a reduction in your earning capacity. There'd be total disability. No, I'm talking conceptually. Let's get out of the technical. Isn't that really what the Act's about? You're disabled when you're no longer able to be the economic person you were before the incident. I would agree with that, yes. Okay. Let me ask a question. Let's suppose the Commission here would award a permanent partial disability under 8D.2 and said, whatever, 20% man as a whole. Would he get both awards? I believe so. Yes, because that's another part of my argument that's going to bring up is that if there's no bar, if you're receiving one benefit, you're receiving a subsequent permanent total. There's nothing in the Act that says you can't get both. I mean, these are not indivisible injuries to the same body part as in the City of Chicago case, right? Correct. So under the City of Chicago, if it was permanent partial disability under 8D.2, he would get both awards. So is your argument, why should it be different under 8D.1? Correct. This is more like the Village of Deerfield case where there are separate and distinct injuries. There are separate and distinct body parts. The first injury was at L5-S1, which affected his low back and his legs. The second injury was C5-C7, which affected his neck and his upper extremities. He reached maximum medical improvement for over two years for the first injury when he was being paid the wage differential when he sustained the second accident. So my argument is essentially in one sentence that the disability didn't end simply because he had a second injury doesn't establish the fact that the first disability ended. The second injury wasn't a cure for the low back injury. Well, I have what I was going with my earlier thing. That we kind of get caught in this trap that disability is a medical thing. No, medical is the cause of the disability. And the disability under the Act is your diminishment as an economic person. I agree. Well, if you agree with that, I'm not sure that supports your argument. Well, what I'm trying to say is that after the second injury, there was no change in his low back. Yeah, and that's about why you're going back to the injury. I guess I would have to, yes. But there was a change in his ability to be an economic person. Because no longer did he show up at the warehouse. But there was no change in his low back condition. Yeah, that's my point. I'm wondering if maybe we don't understand the Act, but it's been going on so long that we get involved in the medical, and we just don't understand what really the Act is for. Well, I guess there's not one nice, neat definition of disability, Your Honor. That's why we have litigation, and that's why I'm here today, I guess. That's why we're lawyers, yes. Ambiguity, right. After the second injury, his low back restrictions didn't change. After the second injury, his low back symptoms didn't improve. There's no opinion in the record that his disability related to the low back ended or was improved in any manner. There's no evidence that the causal connection was severed by the second injury. There's no evidence that the neck injury affected the low back condition in any manner. In effect here, the Commission found that the 8D1 benefit can be terminated by a subsequent additional injury that actually doesn't affect the permanent disabling condition medically. Medically.  Thank you. That is inconsistent with any reasonable construction of Section 8D1. It is contrary to the law, and we ask that it be reversed. We ask that the Court find that Mr. Chilada's disability did not end because of the second accident, that he be awarded 8D1 benefits of $485.65 per week from June 12, 2000, through the present and for the duration of his disability. Thank you. Thank you, Counsel. Counsel, you may respond. May it please the Court, Mr. Glowis. My name is Jeff Rustin. I'm here on behalf of the appellees of Berk Beverage. We're asking that this Honorable Court affirm the prior Commission decision and the two Circuit Court decisions from 2008 and 2014, affirming that the 8D1 wage differential benefits were properly terminated as of January 12, 2003. What's your best case that stands for the proposition? I'm sorry, say that again? What's your best case that stands for the proposition that it should end? The truth is, there really isn't a case that discusses this specific issue. We've talked about receiving both TTD benefits as well as permanent disability benefits or PPD benefits, receiving permanent total disability benefits. Those are all different situations and different scenarios. Here, would you concede the fact that if he had begun drawing his wage differential and then subsequently, in a second accident, became a permanent total, that he would be able to continue to collect both? From my, in my opinion, in my understanding of the Act, I don't believe that he would be able to receive both. Why not? Because essentially you're saying in the first case, in the 8D1 case, you are... Well, no, if he's getting the benefit already and then he becomes a permanent total. Wouldn't he be entitled to collect both? Why?   I guess technically under the Act, if it's two separate scenarios and one is already receiving and then you receive one subsequently, there's no case law to say that you can't receive that. Well, then it seems to be only fortuitous that this man's permanent total occurred prior to him actually being awarded a wage differential. So why should it be different for him than somebody who became a permanent total the day after they got their wage differential? Well, the counsel brought up the Cassidy's case, which in some aspects is different because there is recourse for an employer to challenge a wage differential award within 30 months after the arbitration decision. The Cassidy's case denied that because they tried to challenge it 10 years later. My argument in terms of receiving... Essentially you're trying to receive duplicative benefits where in one case under the 8D1, you're saying that you're partially incapacitated from working and you're also showing an impairment of earnings. In this case, while working for the same employer, he was being benefited with the 8D1 benefits up until the date that he was found to be permanently totally disabled. So at that point, in my contrast to counsel's argument, it's not necessarily a duration of the disability. To receive 8D1 benefits, you have to show both the first problem that you are partially incapacitated from your usual customary job and number two, that you've shown impairment of earnings. But the duration of injury doesn't come into play until after he has satisfied the first two elements. Correct. So he's got to be entitled to the wage differential, but once he is, it exists for the duration of his disability. And I'm not disputing that at this juncture. The disability in terms of the low back medically has not been completely cured or healed. But as of the time that he is receiving permanent total disability benefits,  Okay, let me stop you there. If he can't show an impairment of earnings, then wouldn't he be entitled to an award under 8D2? Arguably, yes. For the first accident. And then if he got an award under 8D2, he would be able to get that award as well as the permanent total disability. Arguably, yes. And essentially that's the difference of what I'm trying to say is that he's entitled to some permanent partial disability award under 8D, whether it's under 8D1 or 8D2. I would agree with that. Okay, now finish up what you were trying to say. Go ahead. Essentially, I'm going along your arguments in terms of the aspect of the disability. There's both medical disability, which I'm not disputing that he suffered a low back injury and his permanent restrictions for that. He was receiving his 8D1 benefits up until the point where he was found to be permanently totally disabled. So he can no longer show the economic aspect of an impairment of earnings because he's no longer capable of working. Essentially, what counsel is trying to ask for is to receive lifetime benefits under 8D1 as well as 8F, the permanent total disability section, which he's arguing that technically he's capable of working under 8D1, but then he's not able to work. He's incapacitated from working under his permanent total disability. Do you think there's any public policy reasons why we wouldn't allow both? Yes. Essentially, it's against what the legislative intent was. I mean, there's two separate sections for this purpose. I mean, 8D1 directly goes for if someone has permanent restrictions but is capable of working, they are compensated for the difference between the job that they had and the job that they are able to get. That is their recourse for that. But if then you're showing that you're permanently totally disabled, you're no longer able to show an impairment of earnings because you can't work anymore. That's not policy. I think Justice Hudson said, what's the policy of a wage differential and what's the policy of a permanent total award? Is not the policy of a wage differential to allow people to remain economically viable at some level in the economy? True, yeah. That's policy, not lawyering. That's policy. So what's the policy then that lies behind a permanent total award? Well, the policy is that you're being compensated under the same aspect for 8D1. The policy is you're being compensated for the fact that you can't work anymore. And as we've talked about, there are maximums that the Act has put into place. It was all technical, but when you get into policy, I think Justice Hudson answered my earlier question. What the heck is this Act here for? What's the purpose? It's not a medical insurance act. It's a workers' compensation act. Compensating for what? Not an injury, but compensating for what? For their inability to work. In terms of 8D1, you're compensating them for their inability to work at their prior job, but they still have the ability to work in some capacity. So they're being compensated because of their inability to make the highest earnings that they were prior. There is that recourse in the middle. But the permanent total, in terms of the fact that you can no longer work again, you're being compensated for receiving weekly benefits for the rest of your life. But you're being compensated for being removed from, because of an incident, from your economic life in society. Your value as an economic person in society. Because of a medical condition that you sustained while working, you can no longer earn what you were potentially earning. But the purpose of the Act in these sections is to provide recourse to these employees that either can no longer return to work ever, or can return to work in a diminished capacity. But the point of this, without the Act, these individuals wouldn't receive any compensation unless you go under... Well, he seems to be saying, your point, why should the second employer afford to his benefit? If he's entitled to it in the first case, why shouldn't it be limited or segmented out to each particular injury? Why should it end because of something that happens subsequent to his entitlement to the wage differential? Well, in this specific case, in the fact that he's still working for the same employer, essentially you're asking for the same benefit, or, I'm sorry, duplicative benefits from the same employer. He was injured and was able to return to work for about three years. He was compensated for that period, for that diminished wage differential. But once he had a subsequent accident, granted to a different body part, it took him out of the workforce completely. Do you have any cases that would talk about the duplicative nature of it as precluding both? There's no case law that specifically states duplicative benefits for AD1 and AD2. So would you say this is sort of a novel case of first impression? It is. And trust me, I've researched, and I know counsel has researched, and there's no specific case law directly on points in terms of whether one can receive both AD1 and... Illinois case law, or have you done... I've searched for... Outside of Illinois? I'm sorry? Have you looked outside of Illinois? I have looked outside of Illinois, and again, there's nothing that I could find. Maybe it's my limited ability on Westlaw, but there's nothing that I could find specifically on this point. There's multiple other cases that say the Comp Act doesn't entitle employees to receive duplicative benefits. I cited a few in my brief, but essentially... But you said earlier in response to Justice Stewart's question, and if I'm wrong, Justice Stewart will correct me on this, but I think if an employee is receiving from another employer a permanent PPD, right, and then later on with another employer receives a PTD award, what happens then? In terms of a permanent partial disability award, that would be the nature and extent of this individual's low back condition, which would be arguably a lump sum payment. So versus an AD1 award, which is ongoing weekly benefits for the duration of the disability, which, again, is ambiguous in terms of duration of disability. There's a medical component to it, and there's also an economic component to it. In this case, I'm not disputing that there's a medical component to it, but once he has been deemed... Well, there's a medical component to any compensation award. That's true. It's not a medical... You know, it's a policy under the Act to compensate you for a condition of not being able to be an economic person in society. Right. Not whether you've got one leg or one toe. Right, and that follow-up with Justice Stewart is, in terms of permanency for PPD, an individual who injures his low back for one employer would receive a permanency award, a lump sum settlement on that, or a lump sum award, and then subsequently injures either the same body part or a different body part for a subsequent employer and is deemed permanently totally disabled. I would argue that there's one award, which then closes out that case, and then the subsequent case he would receive permanent total disability benefits for the duration of his disability. But that 8D2, for man's whole, differs from ongoing wage differential benefits under 8D1, in my opinion. And essentially... It would be the same thing if there was a scheduled loss under 8D. That he'd get the scheduled loss award and permanent total. In the two separate... In the two separate cases. Correct. I would agree with that. But again, it's... I was kicking off your argument that he couldn't prove a wage differential because he couldn't prove an impairment of earnings because of the subsequent accident. But what I was pointing out is, I mean, the law favors wage differential, but if he can't prove that impairment of earnings, he would still be entitled then to a PPD award under 8D2 for some percentage of his whole. Right. And I did do some research which found that if you do go to trial and you try to prove a permanent total disability award and you're unsuccessful in proving the same, that doesn't preclude you from receiving a permanent PPD award, essentially. Right. And what the commission did here is kind of sort of a hybrid thing or whatever they said. You get a wage differential, but you only get it for this long. Which arguably may be substantially less than what he would have gotten under 8D2. True. Yeah. I mean, there's no dispute in that. Essentially, I believe what the commission did was they were awarding the 8D1 benefits, and once he was unable to prove that wage differential award anymore in terms of partially incapacitated and proven impairment of earnings, they said, you know, we're stopping you from 8D1 benefits because you can no longer work at all, so we're going to provide you what, under the Act, your policy and recourse is, you're no longer able to work at all, so we're going to give you your 8A, permanent total disability benefits, for the rest of your life. Which would be what? I'm not on the second case. Conceptually, it's based on what? I'm sorry, I don't understand. See, that's the problem with the whole Act. Arguably, if you really want to perform the Act, you only have 8D1. You don't have any of this other stuff. The ultimate inability to earn is nothing. Zero. Can't work. Total. His permanent total disability award would be calculated based on his warehouseman job, not on his truck driving job. The permanent total disability? I would believe. Well, it's his prior earnings prior to the time of the award, and his permanent total disability occurred when he was a warehouseman. As I recall, he was a warehouseman for over a year, I think. So he'd be drawing his permanent total disability based on average weekly wage at a warehouseman's salary, as opposed to the wage differential, which is calculated based on him being a beer driver who had three times the weekly wage. That is true. He suffered his cervical spine injury while working as a warehouseman, and I believe that's what the Commission awarded in terms of his permanent total disability. Yeah, it is. I think the Council said it was $8,467. Yeah. And again, that's all based on the statute and the maximums that they've created based on the average weekly wages. Yeah, that was the max. That was based on the max when he was warehouse versus the max when he was a beer driver? I believe it was based on the max when he was a warehouse. Right. And the statute lowered that, right? In terms of the... I mean, the calculation had him above the max. Right. For both jobs. Correct. So it's not necessarily the... it was a legislative determination to reduce the max, wasn't it? Does that make the explanation? I don't know. Yeah, I mean, but then again, though, if you're going to provide both 8D1 benefits as well as 8F benefits, then both of those benefits combined would be above the max anyways. So, I mean, it would be contrary to the intent of the act as well. Where did the circuit judge come up with an average weekly wage of $55.65 a week? Council and I are unsure. We both stipulated to the $800, the $485, whatever we... Maximum rate. Yeah, the maximum rate. I believe it was a clerical error, considering that the circuit court judge was the individual who established the maximum rate at the $485 level. I believe it's just simply he mixed it up. A typo? A typo. I believe so. And that's, I mean, both counsel and I stipulated to that. It's $55.65 compared to $85.65, so it's a typo on the 5 as opposed to an 8? I would believe so. I mean, I believe that the max rate is the proper rate in the circuit court judge's decision. I would agree that it would be. Your time is up. Thank you very much. Counsel, you may reply. One thing I'd like to point out regarding this impairment of earnings issue is the commission never found that there was no impairment of earnings. It's not like they said, well, we're not awarding an 81 anymore because he does not have an impairment of earnings. They never made that finding. They actually found that he met the statutory requirements of a wage differential because they awarded an 81. And once the 81 is awarded, it needs to be awarded for the duration of the disability. It's still a little confusing to me what the commission did here because the arbitrator ordered temporary partial disability. And the commission said, we see it differently. We vacate the temporary partial disability and instead award wage differential. And they awarded it for a couple of months longer than the temporary partial disability. But then they based that award on the earnings during the time frame where he was getting it, which would be what you do under temporary partial disability. But as Justice Hoffman pointed out, it has to be based on the time of the arbitration hearing. That's wage differential. So it seems like they were really awarding temporary partial, but calling it wage differential. Can you enlighten us any on that? Well, I believe what happened is they awarded the temporary partial disability benefits while he was working in the warehouse at the lesser-paying job. That was not at maximum medical improvement. And then once he was determined to be at maximum medical improvement, which I believe was June 12, 2000, then that was converted to a wage differential as opposed to temporary partial. Even though they calculated the rate wrong? I think part of what they did was wage differential was to be calculated on an average after the accident. And the temporary partial was more on the actual earnings actually earned. Wasn't the wage differential to be calculated on how much you'd be earning on the date of the arbitration if he were still in full employment? I think that's... Well, the answer is after the accident. No, I understand that, but I think the case suggests that when you do a wage differential, the first calculation is how much would he be earning on the date of the arbitration but for the injury in the full exercise of employment. And then compare that to how much he either is earning or is capable of earning. So it appears to me the commission got it wrong. The only problem is it's still maximum right. Whether their math is bad, it comes out in the same place. I would agree. We had argued 1665 was not a winning making if he wasn't injured. Either way, 12, 1665 is still maximum right. Correct. The other thing I would point out regarding the argument about duplicative benefits was, and I mentioned this before, that the statute, the permanent total award would be based on the lesser wage. So there's not a duplication of benefits. We would have been making much more if he was not injured. Well, but I think Justice Holder's comment was it's maximum right in either direction. Based upon the lesser rate. The maximum temporary total or permanent disability. No, I mean, it's maximum rate of permanent total and wage differential. They're both at maximum rate, are they not? Is it 465 maximum rate? The maximum rate for the wage differential. For the permanent total, it would be a little under $1,100, I believe. All right, so your argument is if he had been working as a beer truck driver, his permanent total benefit would have been $1,100 as opposed to the $464 he's getting. So he hasn't been made whole. Unless he gets them both. Right, and that's the other issue is that he's without a remedy based upon the way this decision is from the commission. He's left without a remedy for the first injury. And for the loss of wages and the disability that he has because of the loss of wages from the first injury, he's left without a remedy. And I don't think that's correct. Let's recap this because we've got a lot of numbers floating around. If Wesson was a beer truck driver, which let's say at the time of arbitration was $1,600 something a week. $1,665. And he was permanently totaled. You're saying he's going to receive what? He was a permanent total, the maximum permanent total rate at the time was I believe around $1,100. Okay. Right now he's only getting $466.50 because he was found permanent total at the lesser paying job because he was making less money because of the first accident. Therefore, he's not made whole. There's nothing else. I'm out of bullets. All right. I think that's it. Thank you, counsel. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall be.